Rule 23 order filed
September 2, 2014;
Motion to publish granted
October 6, 2014.

2014 IL App (5th) 130325

NO. 5-13-0325

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-MR-141 |
| | ) | |
| WILLIAM P. HELM, | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Goldenhersh and Spomer concurred in the judgment and opinion.

**OPINION**

¶ 1    The State filed a complaint under section 15 of the Illinois Animal Control Act

(Act) (510 ILCS 5/15 (West 2012)) and sought an order declaring Roscoe, a dog owned

by the defendant, William P. Helm, to be a vicious dog within the meaning of section

2.19b of the Act (510 ILCS 5/2.19b (West 2012)).  After a bench trial, the circuit court

declared Roscoe to be a vicious dog and ordered that he be humanely euthanized.  The

court also ordered the defendant to pay a $100 public safety fine.  On appeal, the

defendant contends that the circuit court erred in declaring Roscoe to be a vicious dog

where the evidence established that his conduct was justified under section 15(a)(3) of

1

the Act (510 ILCS 5/15(a)(3) (West 2012)), because he was protecting a member of his household. We affirm.

¶ 2    Roscoe, a five-year-old pit bull, is the subject of the case. Roscoe is owned by the defendant, William P. Helm. Roscoe and a Husky called Chloe lived with the defendant in a duplex on Mockingbird Street in Troy, Illinois. On May 3, 2013, Roscoe attacked and bit Kenneth Whittaker, a neighbor of the defendant. On May 14, 2013, the State filed a one-count complaint seeking to declare Roscoe a vicious dog. Subsequently, the State amended its complaint to add a second count. In the amended complaint, the State sought an order declaring Roscoe to be a vicious dog under section 15 of the Act, and alleged that Roscoe was found to be a dangerous dog on three occasions (count I), and that Roscoe, without justification, attacked and seriously injured Kenneth Whittaker (count II). The case proceeded to a bench trial, and the defendant appeared without counsel. A summary of the evidence follows.

¶ 3    Kenneth Whittaker, the State's first witness, testified that he lived near the defendant on Mockingbird Street in Troy, Illinois. He shared a residence with his sister and his nephew, and their two dogs, a Jack Russell terrier called Pork Chop and a boxer mix called Lad. Whittaker testified that he arrived home after work at about 6 p.m. on May 3, 2013, and let the dogs outside so that they could relieve themselves. As he stood outside waiting for the dogs, he noticed a pit bull (Roscoe) and a Husky (Chloe) running down the street, frolicking with each other. The dogs were not leashed or muzzled. They were unaccompanied by any human being.

¶ 4    Whittaker testified that the dogs caught the attention of Pork Chop, who was standing in the driveway.  Pork Chop barked as the dogs ran past the house.  The Husky took note of Pork Chop's barking.  She reversed course and charged toward Pork Chop.  Pork Chop immediately fled and sped toward a tree in her yard.  The Husky gave chase, closed the gap, grabbed Pork Chop, and began to bite her.  She then attempted to flip Pork Chop over on her back.  Whittaker ran over and yelled at the Husky to stop, but she continued to attack Pork Chop.  Whittaker kicked the Husky twice, but she was not deterred.  As Whittaker prepared to kick a third time, he felt something jump on his leg and grab his arm.  It was the pit bull.  The pit bull grabbed Whittaker's arm in his jaws, clamped down, and shook his head from side to side.  Just then, the defendant ran up and shouted at his dogs, Chloe and Roscoe.  He told them to stop.  Chloe released Pork Chop, and Roscoe let go of Whittaker's arm.  The defendant retrieved his dogs and took them home.  He would return to the Whittaker residence a short time later to check on Whittaker and Pork Chop.

¶ 5    After the defendant left with his dogs, Whittaker went inside to see if Pork Chop was hurt.  At that point, he discovered that Roscoe had bitten through his sweatshirt, and that Roscoe's teeth had penetrated and ripped his skin, creating a bloody gash on his arm.  Whittaker went to the emergency department.  The attending physician cleaned the wound, but decided to call a plastic surgeon due to the extent of the injury.  The plastic surgeon sutured the wound and released Whittaker.  Whittaker had two follow-up visits with the plastic surgeon.  The wound healed, but Whittaker was left with a prominent scar on his forearm.

¶ 6    Whittaker's nephew and one of his neighbors testified as occurrence witnesses in the State's case.  Each corroborated Whittaker's account of the incident.

¶ 7    The State then called witnesses and presented evidence regarding prior incidents in which Roscoe had bitten someone.  According to the evidence, Roscoe bit a young woman in March 2012.  Because Roscoe did not have a current rabies vaccination at the time of that incident, he was impounded for 10 days for observation.  Shortly after Roscoe was released from the 10-day hold, he bit one of the defendant's coworkers.  Because of these incidents, the administrator of the Madison County animal control office opened an investigation in order to determine whether Roscoe should be declared a dangerous dog, and he asked the defendant to submit information relevant to that issue.  Following the investigation, the administrator found Roscoe to be a dangerous dog.  In a letter dated May 10, 2012, the administrator notified the defendant of his finding and instructed the defendant to keep Roscoe confined, or restrained with a leash and muzzle at all times when he was out in public.

¶ 8    In October 2012, Roscoe bit an eight-year-old girl.  The administrator investigated this incident and found Roscoe to be a dangerous dog for a second time.  In a letter dated November 13, 2012, the administrator notified the defendant of his finding, advised the defendant that this was the second time Roscoe had been found to be a dangerous dog, and instructed the defendant to keep Roscoe confined, or restrained while he was out in public.

¶ 9    Subsequently, Roscoe attacked and injured Kenneth Whittaker.  Following an investigation, the administrator declared Roscoe to be a dangerous dog for a third time.

4

On May 30, 2013, the administrator sent a letter notifying the defendant that Roscoe was found to be a dangerous dog for a third time, and that he had requested the Madison County State's Attorney to pursue a "vicious-dog" declaration. The defendant did not appeal any of the dangerous-dog findings.

¶ 10   The defendant was called as an adverse witness and then testified in defense of Roscoe. The defendant acknowledged that Roscoe had bitten three people on three separate occasions prior to the incident on May 3, 2013. The defendant also acknowledged that as a result of the incident on October 2012, he had been charged with an ordinance violation for failing to restrain Roscoe, and that he pled guilty to the charge. With respect to the incident on May 3, 2013, the defendant testified he did not know that Roscoe and Chloe had gotten out of the house and that he had not permitted them to roam free. He testified that he thought Roscoe had gone after Kenneth Whittaker because Whittaker was kicking Chloe. The defendant noted that he returned to the Whittaker residence, after he had secured his dogs, to check on Kenneth Whittaker. He stated that he provided insurance information so that Whittaker could submit his medical bills for payment.

¶ 11   At the close of the evidence, the trial court found that the State had proven by clear and convincing evidence that Roscoe, without justification, attacked and seriously injured Kenneth Whittaker, and that Roscoe had been found to be a dangerous dog on three separate occasions. The court declared Roscoe to be a vicious dog and ordered that he be humanely euthanized.

¶ 12    On appeal, the defendant contends that the trial court erred in declaring Roscoe to be a vicious dog where the evidence showed that his conduct was justified because he was protecting a member of his household.  The defendant maintains that under section 15(a)(3), a dog may not be declared a vicious dog and ordered destroyed if he was acting to protect a member of his household.

¶ 13    A primary purpose of the Animal Control Act is to encourage tight control of animals in order to protect the public from harm.  *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1054, 913 N.E.2d 1230, 1235 (2009); *Wilcoxen v. Paige*, 174 Ill. App. 3d 541, 542-43, 528 N.E.2d 1104, 1106 (1988).  A complaint seeking a vicious-dog declaration is a statutory action brought under section 15 the Act.  510 ILCS 5/1, 15 (West 2012).  The legislature has provided specific definitions for many of the terms used in the Act, including the term "vicious dog."  See 510 ILCS 5/2, 2.19b (West 2012).  Section 2.19b defines a vicious dog as "a dog that, without justification, attacks a person and causes serious physical injury or death or any individual dog that has been found to be a 'dangerous dog' upon 3 separate occasions."  510 ILCS 5/2.19b (West 2012).  Section 15(a) provides that: "[a] dog may not be declared vicious if the court determines the conduct of the dog was justified because *** the dog was *** protecting itself, its owner, custodian, or member of its household, kennel, or offspring."  510 ILCS 5/15(a)(3) (West 2012).

¶ 14    The defendant argues that under section 15(a)(3), the trial court was required to find that Roscoe was not a vicious dog because the undisputed facts show that Roscoe acted to protect Chloe, a member of his household.  Under the defendant's interpretation

of this section, a dog's conduct would be justified each and every time the dog perceives a threat and acts to protect himself, his owner, or a member of his household. We do not believe that section 15 can or ought to be given the interpretation ascribed by the defendant because the statutory language is clear, and because the defendant's interpretation is not in keeping with a primary legislative purpose of the Act. See *People v. Tara*, 367 Ill. App. 3d 479, 484, 867 N.E.2d 961, 967 (2006) (plain language of the statute is the best indicator of the true intent and meaning of the legislature). Section 15 sets forth certain circumstances under which a dog's conduct may be justified, and clearly states that the court will make the ultimate determination of whether such circumstances are present and justify a dog's conduct in the case before it. 510 ILCS 5/15 (West 2012). Under section 15, the court may find that a dog's conduct is justified where he was acting to protect a member of his household, but the statute does not mandate that a court find that a dog's conduct is justified in every instance where a dog perceives a threat and acts to protect a member of its household.

¶ 15    In this case, the trial court considered and rejected the defendant's contention that Roscoe's attack on Kenneth Whittaker was justified because he was protecting a member of his household. The court noted that the evidence showed that prior to Roscoe's attack on Kenneth Whittaker, the administrator of the Madison County animal control office had twice found Roscoe to be a dangerous dog and twice directed the defendant to keep Roscoe restrained at all times for the protection and safety of the public, and that the defendant had twice failed to do so. The court also noted that the evidence clearly showed that when Roscoe is in contact with people other than his owner, the people are

7

in danger. The court considered that a purpose of the Act was to protect the public from vicious animals, and determined that even though Roscoe may have been reacting to protect Chloe, Roscoe's attack could not be justified because he should not have been roaming around outside unsupervised and without a muzzle or other restraint.

¶ 16    After reviewing the record, we conclude that the trial court properly construed and applied the statutory provisions of the Act, and that the court's determination that Roscoe is a vicious dog within the meaning of section 2.19b of the Act is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

¶ 17    Accordingly, the judgment of the circuit court is affirmed.

¶ 18    Affirmed.

2014 IL App (5th) 130325

NO. 5-13-0325

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,  ) Appeal from the
                                       ) Circuit Court of
    Plaintiff-Appellee,              ) Madison County.
                                       )
v.                                     ) No. 13-MR-141
                                       )
WILLIAM P. HELM,                       ) Honorable
                                       ) Barbara L. Crowder,
    Defendant-Appellant.             ) Judge, presiding.

_____

**Rule 23 Order Filed:**            September 2, 2014
**Motion to Publish Granted:**   October 6, 2014
**Opinion Filed:**               October 6, 2014

_____

**Justices:**       Honorable Judy L. Cates, J.

              Honorable Richard P. Goldenhersh, J., and
              Honorable Stephen L. Spomer, J.,
              Concur

_____

**Attorney**      Curtis L. Blood
**for**           1602 Vandalia Street
**Appellant**   Collinsville, IL 62234-4459

_____

**Attorneys**   Hon. Thomas D. Gibbons, State's Attorney, Madison County
**for**           Courthouse, 157 N. Main Street, Suite 402, Edwardsville, IL 62025;
**Appellee**   Patrick Delfino, Director, Stephen E. Norris, Deputy Director, Kelly
              M. Stacey, Staff Attorney, Office of the State's Attorneys Appellate
              Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249,
              Mt. Vernon, IL 62864

_____